IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| SA'DA JOHNSON, et al., | ) |
| | ) |
| Plaintiffs, | ) Case. No. 00-1349 |
| | ) |
| v. | ) Judge Joe B. McDade |
| | ) |
| BOARD OF EDUCATION CHAMPAIGN | ) Magistrate John Gorman |
| COMMUNITY UNIT SCHOOL DISTRICT # 4, | ) |
| | ) |
| Defendant. | ) |

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR
REVISED FEE PETITION INVOICE CALCULATIONS**[1]

---

[1] On December 27, 2010, Plaintiffs filed a Motion to Extend Time to File Replies to January 7, 2011.

In an effort to resolve this fee dispute, Plaintiffs reviewed and revised their invoices consistent with the directives this Court included in its September 30, 2010 Order. *See* Opinion and Order, Dkt. #330, p. 11. In its Response to Plaintiffs' revised invoice calculations, Defendant requests this Court to further reduce Plaintiffs' fees and costs, but provides no support for such request. In fact Defendant goes as far as to request that the Court make multiple arbitrary percentage cuts on top of percentage cuts without citing to any authority and relies for the most part on only examples of some of Plaintiffs' entries for which it complains.[2] By taking this approach, Defendant has chosen to ignore this Court's clear directive to identify the "specific entries they are disputing (in light of its rulings of this Court)." *Id.* In light of Defendant's partially non-responsive November 24, 2010 filing and Plaintiffs' application of the Court's September 30 Order, Plaintiffs' counsel should be awarded its fees and costs submitted on October 15, 2010, adjusting for certain items identified in Defendant's November 24, 2010 Response. See Exhibit A, Summary of Plaintiffs' Fees and Costs.

I. **PLAINTIFFS' FEES ARE REASONABLE BASED ON THEIR LEVEL OF SUCCESS AS FOUND BY THIS COURT.**

In its September 30, 2010 Opinion and Order this Court held that Plaintiffs are prevailing parties and are entitled to reasonable attorney's fees and costs related to their monitoring of compliance and their post-decree efforts to extend the Consent Decree. In reaching this finding, this Court first concluded that it could not find "Plaintiffs' post-decree proceedings to be wholly or clearly separable from the underlying proceedings that brought about the Consent Decree." The Court explained that Plaintiffs' efforts in seeking additional time in order to effect the goals of the Consent Decree "were taken in their role as monitors of a continuing and vital Consent Decree," and that "Plaintiffs played an important and integral role in monitoring the progress

---

[2] In most instances in its Response, Defendant describes the line-item objections it provides as "examples" and appears not to provide full line-item objections as directed by this Court.

under the Consent Decree and informing the Court of deficiencies." *See* Dkt #330, p.9.

Thus, Defendant's argument that Plaintiffs' final fee award should be reduced by 75 percent based on their total lack of success in their extension related efforts should be rejected. In addition, this argument should be rejected because it seeks to cut Plaintiffs' fees by a predetermined percentage without citing to any authority as support, and because it seeks a 75 percent reduction in fees without pointing to any specific entries in Plaintiffs' revised invoices as this Court specifically instructed.

II. **PLAINTIFFS' FEES FROM JANUARY 2009 THROUGH OCTOBER 2009 ARE REASONABLE.**

Even after the comprehensive line-by-line revisions Plaintiffs have made to their invoices from January 2009 through October 2009, Defendant still maintains Plaintiffs' fees for this period are unreasonable because they have billed for excessive time, have provided inaccurate accounting, and have billed for non-monitoring legal work. For the reasons stated below, Defendant's arguments regarding the reasonableness of Plaintiffs' fees should be rejected.

A. **Plaintiffs Only Expended the Time Necessary to Obtain the Results they Sought.**

Defendant argues that Plaintiffs billed an excessive number of hours from January 2009 through October 2009. To establish the "gross"' excessiveness of Plaintiffs' billings during this period, Defendant uses as an example the fees Plaintiffs charged for June and July 2009 and states Plaintiffs are billing $601,853.70. This argument should be rejected because it is nonresponsive to this Court's instruction to point all the specific "excessive" entries during the period of January to October 2009. Further, it should be rejected because even the amount cited by Defendant as an example is incorrect given the revisions Plaintiffs made to their invoices. Plaintiffs' fees for January to July 2009, for instance, were reduced from $1,068,444.70 to

2

$939,696.70, including a reduction of $147,736 for the months of June and July 2009.

Defendant also argues that Plaintiffs' argument that they billed a reasonable number of hours in 2007 and 2008 because Defendants billed a similar number of hours "has no basis in fact" as it relates to Plaintiffs' attorney hours from January to October 2009. However, Defendant forgets that Plaintiffs not only argued that a comparison of the hours spent by the attorneys on both sides is useful to evaluate the reasonableness of hours expended, but also that courts have to do such comparisons without ignoring that other factors may cause the prevailing party to spend more time than the losing party. *See Mohr v. Chicago School Reform Bd. of Trustees of the Bd. of Ed. of the City of Chicago, et al.,* 194 F.Supp.2d 786, 789 (N.D. Ill. 2002)(noting that losing counsel's argument that he could have done the winning counsel's work in less time is not worth much standing by itself because if winning counsel had taken less time, "he might not be in a position to ask for attorneys fees as the prevailing party's representative"); *see also Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1151 (9th Cir. 2001) (per curiam))(concluding that "opposing parties do not always have the same responsibilities under the applicable rules, nor are they necessarily similarly situated with respect to their access to necessary facts, the need to do original legal research to make out their case, and so on."); *Moore v. Bank of America, N.A. (USA)*, 2008 WL 68851, *3 (S.D. Cal. 2008) (cautioning that the comparison of opposing parties' attorneys' hours "must carefully control" for such factors as "the differing burdens on plaintiffs and defendants").

While Plaintiffs may be billing more than Defendant's counsel between January and October 2009, this is to be expected. It was Plaintiffs' burden throughout the duration of the Consent Decree and during the proceedings in their extension motion to establish when the District failed to implement the Decree. Also, during this period Plaintiffs did not only have to

3

conduct expedited discovery and prepare for the hearing on their extension motion, but, at least from January to the end of June 2009, Plaintiffs were also conducting their normal monitoring duties, which were substantial given the District's historically deficient compliance that led to the Collaboration Plan and the Acceleration Plan. Consequently, the Court should reject Defendant's unsupported argument that their fee amount be reduced by 66 percent[3] for excessiveness.

1. **Plaintiffs' Inter-Office Communication Entries are not Excessive.**

Defendant argues that the Court should reduce Plaintiffs' fee award for excessive inter-office communication by at least 66 percent. This argument should be rejected because in addition to not citing any authority to support the percentage it is requesting this Court to cut from Plaintiffs' fee petition, Defendant also fails to specify how the inter-office communications it lists in Appendix B of its response are excessive or unreasonable. An attorney opposing fees has the "responsibility to state objections with particularity and clarity." *See Hutchison v. Amateur Elec. Supply, Inc.*, 42 F.3d 1037, 1048 (7th Cir. 1994); see also RK, Co. v. See, 622 F.3d 846, 854 (7th Cir. 2010)(holding that a defendant opposing a fee petition had to "detail his objections to the fee petition such that the court can determine what portion of the fees, if any, were not reasonably expended").

Moreover, the entries listed by Defendant will show this Court several factors supporting their reasonableness. *See* Dkt. #334, Appendix B. First, it is clear from the descriptions that the communications were pertinent to issues related to Plaintiffs' monitoring duties, including discussions of Quarterly Reports, Task Forces, Joint Calls with the District, and their litigation of

---

[3] Note, this 66 percent proposed cut is in addition to the 75 percent cut Defendant proposes in Section I of their Response.

4

the extension motion. Secondly, the vast majority of the entries involve only two attorneys, and when they involve three or more attorneys, only one or two attorneys are billing for the communication. Third, the majority of these communications involved the coordination of projects between lead counsel, Carol R. Ashley, and less senior attorney and paralegal staff. *See* Ex. B, Declaration of Carol R. Ashley. Had this coordination not occurred, Ms. Ashley would have had to do the work at a higher rate. *Id.* Finally, the vast majority of the communications lasted from 0.1 to 0.5 hours. For all these reasons, the Court should reject this argument and award Plaintiffs fees for these communications.

2.  **Plaintiffs are not Billing for Redundant or Unnecessary Hours.**

Defendant next cites four groups of entries as support that they "continue to seek fees for multiple attorneys to conduct redundant work." Nothing could be further from the truth.

First, the time charged by Alonzo Rivas and Will Thomas to attend a community meeting also attended by Carol Ashley is not duplicative or redundant because while Ms. Ashley was meeting with community leaders, Mr. Thomas and Mr. Rivas were meeting with individual community members who had grievances about the District. Ex. B, Declaration of Carol R. Ashley. Secondly, the time charged for Ms. Katherine Mangold-Spoto to travel and attend a court hearing also attended by Ms. Ashley was not duplicative because she was intricately involved in the preparation of the legal matters presented to the Court during the status hearing held on April 28, 2009.[4] *Id.* Third, none of the work performed by Ms. Venita Hervey during meetings attended by other counsel was duplicative because her participation was related to her assigned task of monitoring implementation matters regarding Special Education and Alternative

---

[4] Moreover, during the same hearing, the District was represented by Ms. Maree Sneed, Mr. John Relias and Ms. Sally Scott.

Education, areas in which she specializes. *See* Dkt # 315, Ex. B, Declaration of Carol Ashley, pp. 4-5. Finally, the work Mr. Stewart Weltman performed during his participation in this case was neither unnecessary nor duplicative even though there were already six attorneys working on the case from time to time. Mr. Weltman's sole role was to prepare and present Plaintiffs' case at the extension hearing. Ex. B, Declaration of Carol R. Ashley. Indeed, the District itself added at least three attorneys to its team during this time, including trial counsel, Mr. John Relias.[5] Thus, this Court should award fees for this work.

3. **Plaintiffs Invoices do not Include Vague Entries.**

Defendant also complains that "vague billing entries [are] found throughout Plaintiffs' fee petition," and argues, again without citing to any authority, that this Court should reduce Plaintiffs' fee award for such entries by at least 66 percent.[6] As an initial matter, this Court should reject this argument because in addition to not citing any authority supporting their proposed 66 percent cut, Defendant again fails to follow this Court's instruction to "indicate which *specific entries* they are disputing" as vague. Defendant merely points, as way of example, to certain entries for July 2009 in Appendix E of its Response to support its broad conclusion that vague entries are found throughout the fee petition. Moreover, Defendant fails to carry its responsibility to detail to the Court how or why those entries are vague. *See Hutchison*, 42 F.3d at 1048; *See*, 622 F.3d at 854.

Also, the entries cited by Defendant in Appendix E as examples are not vague at all. A

---

[5] Based on the Franczek Radelet's invoices from June to October 2009, at least two other attorneys, Amy Dickerson and Jackie Wentz-Gharapour, joined Sally Scott, Jennifer Smith, Maree Sneed and John Relias to complete the District's legal team. See Ex. C, Franczek Radelet invoices.

[6] This 66 percent proposed cut is in addition to the 75 and 66 percent cuts Defendant proposes in Section I and Section III, Part A, respectively, of their Response.

review of such entries includes descriptions such as "Trial and Motion Prep," "Team Trial and Settlement Prep," "Review Documents/Research/Drafting for SJ Response, Research/Drafting/Editing Limine Motions…" *See* Dkt. #334, Appendix E.  The descriptions clearly show the entries were relevant to the monitoring work Plaintiffs' counsel performed in this case, and more importantly, state the task to which they are related- i.e. trial, settlement, summary judgment response, motion in limine, etc.  More specificity is not required.  *See Nielsen v. Basit,* 1995 WL 33119 at *10-11 (N.D. Ill. 1995)(finding that plaintiffs' attorneys did not need to describe "exactly what preparations they made for status hearings before the Court," and that entries with general explanations such as "drafting, revising, preparing" were not vague because it was clear they were performed with regard to an amended complaint).  In addition, because Plaintiffs submitted their invoices to the District contemporaneously and in the middle of the litigation of the extension motion, Plaintiffs did not provide more specific entries to avoid revealing attorney work product.  For these reasons, the Court should reject this argument.

4. **Entries Defendant Characterizes as Block Billing are Proper.**

Defendant contends that "Plaintiffs' fee petition is replete with block billing," that "block billing seems to be the norm rather than the exception" in Plaintiffs' invoices, and that the Court should reduce Plaintiffs' fee award by 65 percent.[7]  This Court should reject this argument because, again, Defendant only cites to examples in Plaintiffs' invoices and fails to follow this Court's instruction to point out all the specific entries it is disputing are improper block billing. In addition, Defendant fails to cite any authority to support its request for a 65 percent cut to

---

[7] This is an additional 65 percent proposed cut to the 75, 66 and 66 percent cuts Defendant proposes in Section I, Section III, Part A and Part A, Sub-part 3, respectively, of their Response.

7

Plaintiffs' fee petition.

To the extent there are entries by Plaintiffs' counsel addressing multiple tasks in one day, all tasks are related to Plaintiffs' monitoring work, including their preparation for the extension motion. *See* Ex. B, Declaration of C. Ashley. In fact, the entries Defendant cites in Appendix F of its Response clearly state the date the work was performed, a description of the work, the total hours, the total cost, and the specific attorney who performed the work. *See Chao v. Current Development Corp.*, 2007 WL 2484338, at *3 (N.D.Ill. Aug 27, 2007) ("So long as the billing statement reasonably sets forth the dates of work, description of work, total hours expended, and total cost for task, the use of block billing does not preclude an award of fees").

Even if Plaintiffs entries are considered block billing, they are proper. The Seventh Circuit has made it clear that "[a]lthough 'block billing' does not provide the best possible description of attorneys' fees, it is not a prohibited practice." *Farfaras v. Citizens Bank and Trust of Chicago,* 433 F.3d 558, 569 (7th Cir. 2006). The proper question to ask is whether the entries provide enough detail to allow the court and the opposing party to determine that the time billed accurately reflects the time spent on the case. *See Top Tobacco, L.P. v. North Atl. Operating Co., Inc.,* No. 06 C 950, 2007 WL 2688452, at *4 (N.D.Ill. Sept. 6, 2007) (finding that block billing was not surprising in a large and complex case that required attorneys to "perform multiple tasks on any given day"). Plaintiffs' entries show that the time billed accurately reflects the time spent by Plaintiffs' counsel in their monitoring activities.

**B.    Minor Accounting Inaccuracies.**

Defendant argues that Plaintiffs' revised invoices do not reconcile. Plaintiffs agree there are some inconsistencies in the totals included in the revised invoices they submitted on October 15, 2010. The inconsistent totals resulted from the fact that counsel opted for manually striking

8

and subtracting all cut hours so the Court and Defendant could clearly see what entries had been stricken. However, in subtracting and reaching the new totals, counsel missed some entries that had been stricken. *See* Ex. D, Declaration of Rebecca Moore. Plaintiffs are now submitting corrected invoices from January through October 2009 that show Plaintiffs' counsel did not subtract from theirs fees a total of $6,663.00. *See id; see also* Ex. E, Table and Revised 2009 Invoices. These new totals were reached by deleting all stricken entries from the invoice and allowing the Timeslips software to re-calculate the totals. *See* Ex. D, Moore's Decl.

    **C.**    **Fees for Non-Monitoring Legal Work.**

The District contends that even after Plaintiffs revised their invoices, they continue to bill for activities unrelated to the monitoring of the Consent Decree. Regarding Defendant's assertions that Plaintiffs' counsel billed for work related to special education issues for individual students and post-Decree student assignment, Plaintiffs' counsel reviewed the entries identified by Defendant and have made adjustments accordingly when there was an inadvertent listing. However, the other entries identified by Defendant were clearly monitoring work and Plaintiffs maintain these submissions are proper. *See* Plaintiffs' Exhibit F, responding to Defendant's Appendix G.

**III.**    **PLAINTIFFS ARE ENTITLED TO FEES FOR WORK SPENT ESTABLISHING THEIR ENTITLEMENT TO FEES**

As a general matter, and Defendant does not refute this point, prevailing plaintiffs are entitled to recover fees and costs incurred pursuing fee petitions. *Bond v. Stanton,* 630 F.2d 1231, 1236 (7th Cir. 1980) ("[T]he broad congressional policy of enforcing civil rights through private litigation mandates that prevailing plaintiffs be awarded counsel fees for time spent establishing their entitlement to fees"). Therefore, there is no question that Plaintiffs' counsel is entitled to

compensation for the time they spent working on the fee petitions.

> **A.    Plaintiffs Should Recover Fees for the Work they have Performed to Establish their Entitlement to Fees Because it Represents a Small Percentage of Their Total Work in the Case.**

Defendant, however, contends that Plaintiffs' counsel spent an excessive amount of time preparing their fee petitions. That argument lacks any merit. Between November 2006 and October 2009, Plaintiffs' counsel spent a total of **7,564.94** hours monitoring the District's progress under the Consent Decree, informing the Court of compliance deficiencies and litigating the extension motion, all of which, according to this Court's ruling, are part and parcel of "the underlying proceedings that brought about the Consent Decree." *See* Ex. G, Total Revised Attorney Hours for Monitoring Consent Decree from November 2006 through October 2009. In turn, they only expended a total of **381.8** hours preparing their fee petitions for this same period. *See* Ex. H, Plaintiffs' Work Related to Motion to Compel Payment of Fees and Costs for the Periods of November 2006 through December 2008; Ex. I, Plaintiffs' Work Related to Fee Petition for the Periods of January 2009 through October 2009. This is approximately 5 percent of the total time Plaintiffs' counsel spent on the merits of the case, a reasonable ratio by Seventh Circuit standards.

On the issue, the Seventh Circuit has held that "the relevant inquiry is whether the hours claimed to have been expended on the fee request bear a rational relation to the number of hours spent litigating the merits of the case." *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 554 (7th Cir. 1999). Following this standard, the Seventh Circuit has allowed attorneys to recover hours for the preparation of fee petitions that represented about 6 percent of the total time spent on the merits of the case. *See Spegon*, 175 F.3d at 554 (upholding the decision of a district court to reduce the number of hours requested for the preparation of a fee petition to 1.6 hours where

10

the attorney had sought an award for litigating the merits of the case "representing roughly twenty-five [25] hours of attorney and paralegal time."); *see also, Ustak v. Fairman*, 851 F.2d 983, 986-88 (7th Cir. 1988) (reducing the number of hours requested for preparation of fee petitions to 35.8 hours of attorney time and 10.54 hours of law clerk time where they each had spent 561.4 and 139.15 hours, respectively, in relation to the merits of the case).

      **B.**      **Plaintiffs Should Recover Fees for the Work they Have Performed to Establish their Entitlement to Fees for their Monitoring Work During the Period of November 2006 through December 2008.**

Defendant argues that because Plaintiffs have reduced their fee request for the monitoring work they did during the period of November 2006 through December 2008 by an amount greater than what Defendant withheld, Plaintiffs should not recover any fees for work performed to prepare and file their Motion to Compel Payment of Fees and Costs for the same time period. This argument should be rejected for one compelling reason: This work was prompted by the District's refusal to provide a coherent accounting of the specific items they objected to in Plaintiffs' invoices during this period. *See* Ex. B, Declaration of Carol R. Ashley.

The uncontested facts show that before mid-2007, Defendant would specify its objections to Plaintiffs' invoices and that the parties would confer to resolve them *before* Defendant submitted a payment. *See* Memo in Support of Fee Petition, Dkt #315, p.3. In May 2007, however, Defendant unilaterally initiated a different practice of making mostly general objections, if any, and withholding fees and costs while making *deficient* payments to Plaintiffs without first discussing any objections to the invoices. *Id.*

Despite Plaintiffs' efforts to engage Defendant in a full discussion of these disputes, which included sharing with Defendant three separate accountings of what they believed was owed in their invoices, Defendant failed to provide its own accounting with line item objections

11

or to specify with which of any of Plaintiffs' accounting details it disagreed.  *See* Dkt #245 at 2. *See* also, Ex. B, Declaration of Carol R. Ashley.  As a result of Defendant's refusal to provide line-item objections, Plaintiffs were forced to spend substantial paralegal and attorney time in generating and reviewing their own accountings to try to identify Defendant's actual objections from its general objections.  *See* Ex. B, Declaration of Carol R. Ashley.  Eventually Plaintiffs had to seek the intervention of the Court monitor to resolve the fee dispute, and later file their Motion to Compel payment of their fees and cost with this Court.[8]  *See* Dkt # 245, pp.3-5.

Given these facts, even if this Court found Defendant's argument persuasive, not awarding Plaintiffs' counsel any fees for their work to resolve the fee disputes that arose during the period of November 2006 through December 2008 would be inequitable and would only reward Defendant for its bad behavior.  Moreover, Plaintiffs have, as they did in other parts of their invoices, revised the amount of fees they are seeking to recover for this work.  While Defendant states in Section IV of their Response that Plaintiffs are seeking to recover $84,235.50 in fees for this work, *see* Dkt. #334, p.7, that amount is no longer correct.  Plaintiffs have revised and substantially cut their fees for work performed to establish their entitlement to fees during this period to $53,612.50. *See* Ex. H, Motion to Compel Work for Period of Nov. 2006 through Dec. 2008.   Thus, this Court should reject Defendant's argument and award Plaintiffs their revised fee request of $53,612.50 for the work they performed leading to the filing of their Motion to Compel Payment of Fees and Costs .

**C.      Plaintiffs have not Billed for Subsequent Fee Work in this Case.**

---

[8] A close look at Defendant's Appendix A reveals that Defendant's withheld amounts do not consistently correspond to Plaintiffs' revisions.  For example, for February 2008 Plaintiffs revised their fees by $1221.00 but Defendant withheld $6860.00 and for November 2006 Defendant withheld $0 but Plaintiffs revised their invoices by $5572.00.  In fact, Defendant's Appendix A demonstrates that there was no rhyme or reason to Defendant's withheld payments.

On a minor note, Defendant also argues that Plaintiffs should not be able to recover $25,389.00[9] in fees for the time they spent to comply with this Court's order requiring them to stay within the allotted page limit. This argument should be rejected also. If Plaintiffs had known the Court was going to deny their motion for leave to file an oversized brief, Plaintiffs would have had to spend about the same amount of time to cut down the initial brief down to the allotted page limit anyway. Moreover, Defendant does not account for the fact that Plaintiffs did not bill the District for any work they did on the case during November and December 2009, including fee work related to their Reply, to Defendant's Motion to Strike their Reply, and for Defendant's Sur-reply which by itself amounts to at least $42,178.00.

IV. **THE DOCTRINE OF LACHES DOES NOT BAR PLAINTIFFS FROM RECOVERING FEES AND EXPENSES.**

Defendant argues that Plaintiffs are barred by the doctrine of laches from recovering the fees submitted by Venita Hervey for January through August 2008 and for October through December 2008, and expenses submitted in March 2007 for the time period of October 2005 to June 2006 by Futterman and Howard. This Court should reject this argument first and foremost because Defendant is attempting to back-door an argument it could have raised in its extensive response and sur-reply briefs, but did not. *See* Dkt # 324 and 329. Consequently, Defendant has waived such argument.

Secondly, Defendant's laches argument should be rejected because Defendant fails to cite to any authority supporting the proposition that attorneys' fees and costs expended in the litigation of a matter by a prevailing party, such as the Plaintiffs, are barred if not raised within

---

[9] The correct amount Plaintiffs seek to recover for this work, which was done between September 4 and September 18, 2009, is $25,289.50. *See* Ex. I, Fee Petition Work for January to September 2009.

13

six months. If that were the case, the majority of fee petitions would be barred since most of these are filed years after the fees and expenses are incurred. This would certainly be a violation of Section 1988(b)'s mandate to award reasonable attorney's fees and costs to prevailing parties enforcing civil rights through private actions. *See* 42 U.S.C. § 1988(b) (West 2010).

Third, with respect to the allegedly late expenses submitted by Futterman & Howard, Defendant again fails to follow this Court's instructions. Because Defendant fails to point out the specific costs they are disputing, the Court should reject this argument.

V.     **COSTS SUBMITTED BY PLAINTIFFS ARE REASONABLE.**

Defendant argues that costs submitted by Plaintiffs, including telephone charges, electronic research and postage are to be considered overhead and are not recoverable. The Court should reject this argument, first, because during the time the Consent Decree was in effect, Plaintiffs would include these items as cost in their invoices, and the District would pay for them without any objection. *See* Ex. B, Declaration of Carol Ashley. Secondly, Defendant did not raise this argument in its initial brief and, therefore, it is waived. Thirdly, Seventh Circuit precedent still treats telephone charges, electronic research and postage as recoverable expenses. *Steinlauf v. Continental Illinois Corp.,* 962 F.2d 566, 570 (7th Cir.1992)(finding that a trial court's treatment of computer research expenses as lawyers' overhead rather than expenses was clear error because if those expenses were treated in this "fashion, lawyers' hourly rates would be even higher than they are, requiring an adjustment in the lodestar"); *see also Burda v. M. Ecker Co.,* 2 F.3d 769, 778 (7th Cir. 1993)(finding that telephone and postage charges, among others, "are properly recoverable by a prevailing party" in a fee petition). For these reasons, the Court should allow Plaintiffs to recover their telephone, electronic research and postage charges as cost.

Additionally, the Court should reject Defendant's argument that Plaintiffs should not be able to recover the costs of multiple attorneys traveling to meetings where their presence was supposedly duplicative. Plaintiffs have submitted costs for no more than three attorneys for Quarterly Meetings with the Monitor or hearings before the Court. Plaintiffs believe this is reasonable in light of three members from Defense Counsel's team and the Court monitoring team that often attended Quarterly Meetings and hearings.

## VI. A REDUCTION OF PLAINTIFFS' FEES BY A REASONABLE PERCENTAGE IS NOT WHAT THIS COURT ENVISIONED IN ITS ORDER.

To conclude its Response, Defendant argues that because Plaintiffs' fee request is so voluminous and has excessive, duplicative and vague entries, as well as other "infirmities," that this Court should reduce the proposed fee petition by a reasonable percentage. This, as indicated elsewhere in this reply, is another example of the Defendant attempting to abdicate its responsibility to indicate to the Court "specific entries" that it is disputing as set forth in this Court's September 30, 2010 Order. Therefore, this argument should be rejected.

## VII. CONCLUSION.

Defendant has squandered the opportunity this Court gave to it to provide line-item objections on Plaintiffs' revised invoices. However, this should not be a surprise since, as Plaintiffs have stated in their fee submissions, Defendant has refused to provides such specific objections since 2006, when it decided to make fees an issue in this case.

WHEREFORE for the above and foregoing reasons, this Court should grant Plaintiffs' Amended Fee Petition with any current rate adjustment or accrued interest as this Court deems appropriate.

                                              Respectfully submitted,

                                              s/ Carol R. Ashley
                                              One of Plaintiffs' Attorneys

Date:  January 7, 2011

Carol R. Ashley
FUTTERMAN HOWARD
   ASHLEY & WELTMAN, P.C.
122 S. Michigan Ave.
Suite 1850
Chicago, IL  60603
(312) 427-3600


G:\DA\Champaign\Pleadings\Reply re Ps Invoice Recalculation.doc

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that she caused a copy of the foregoing PLAINTIFFS' REPLY IN SUPPORT OF THEIR REVISED FEE PETITION INVOICE CALCULATIONS to be served on January 7, 2011, upon the following counsel of record by the Court's ECF filing system:

>Sally Scott
>Franczek Radelet
>300 South Wacker Dr.
>Suite 3400
>Chicago, IL  60606-6785

>s/ Carol R. Ashley
>One of Plaintiffs' Attorneys